## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

In Re:  LEAVERTA PAYNE, Debtor

Case No. 20-BK-18558
Chapter 7
Hon. Timothy A. Barnes

PATRICK S. LAYNG, United States Trustee
                    PLAINTIFF
V.
GERACI LAW L.L.C., STEVEN S. CAMP,
RYAN S. FOJO, JUAN M. VILLALPANDO,
CECIL D. SCRUGGS, AND
WILLIAM ALEXANDER WILSON,
                    DEFENDANTS

ADV. NO. 20-00400

## NOTICE OF MOTION

TO**:**        See attached list

PLEASE TAKE NOTICE that on **January 4, 2021 at 1.00 pm**, I will appear before the Honorable Timothy A. Barnes, or any judge sitting in that judge's place, and present Defendants' **Motion  to Dismiss Under F.R.C.P. 12(b)(6)**, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video,** use this link:  https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and password.

**Meeting ID and password.**  The meeting ID for this hearing is 161 329 5276 and the password is 433658.  The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

By:        */s/ Peter F. Geraci*
Peter F. Geraci
Geraci Law L.L.C.
55 E. Monroe Street #3400
Chicago, Illinois 60603
312-739-2169
pgeraci@geracilaw.com

## CERTIFICATE OF SERVICE

I, Peter F. Geraci, certify that a copy of this notice and the attached motion was served on each entity shown on the attached list at the address shown and by the method indicated on the list on December 18, 2020**.**

*/s/ Peter F. Geraci*
Peter F. Geraci

## LIST OF PARTIES SERVED

### Via ECF

Office of the U.S. Trustee

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

In Re:  LEAVERTA PAYNE, Debtor

_____

PATRICK S. LAYNG, United States Trustee
PLAINTIFF

V.

GERACI LAW L.L.C., STEVEN S. CAMP,
RYAN S. FOJO, JUAN M. VILLALPANDO,
CECIL D. SCRUGGS, AND
WILLIAM ALEXANDER WILSON, DEFENDANTS

Case No. 20-BK-18558
Chapter 7
Hon. Timothy A. Barnes

ADV. NO. 20-00400

## DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6)

Now come Defendants, by their attorneys, Peter F. Geraci, Nathan E. Curtis, and Jonathan D. Parker, and move to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12 (b)(6):

### Introduction

1.     The complaint seeks to punish and enjoin use of bifurcated fee contracts, because the contracts do not bifurcate services. It does not state a claim upon which relief can be granted, because the Geraci Law contracts conform to the Code (post-BAPCPA), 11 U.S.C. §§ 329, 524(f), 526 and 528; L.R. 2090-5(B), F.R.B.P. 2016(b), Directors Form 2030-B, and most state ethical rules. The relief sought has no basis in the law or facts. Contracts that satisfy Mr. Layng's theories violate the Code, the Local Rules, and ethical rules.

2.     The complaint claims the Geraci contracts, which bifurcate fees, but not services, are a "scheme" to "extract" fees from "victims". It is insulting, argumentative and conclusory. It violates F.R.C.P. 8 (a)(2). This Court, as well as Defendants, are therefore forced to get to the facts and ignore the rest:

*Page 1 of 15*

> [We] "are not bound to accept as true a legal conclusion couched as a factual allegation…A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009)

The complaint's tone appears to violate the Seventh Circuit Rules of Civility, Lawyers Duties to Other Counsel # 4: "We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety." We do not argue here that Mr. Layng has bad motives, but only that his pleadings are inexplicable in light of prior positions he has taken, and the law.

3.     Applied to the facts, his complaint has no support in the law, and should be dismissed with prejudice. Along with many misstatements and mischaracterizations, Mr. Layng omits the fact that he knew all about thousands of the same or similar Geraci Law contracts since at least 2016:  all filed on Pacer, as required by Local Rules, for Mr. Layng, the Court and the public to see. Mr. Layng can hardly call them a "scheme" in its pejorative sense, nor does he claim a failure of disclosure

4.     Mr. Layng also has not disclosed to the Court that he filed a Section 329 motion against The Semrad Law Firm LLC (Semrad) *In re Michael Novak, 18-04322, J. Cox.  Case 18-04322 Doc 13 Filed 03/29/18.* **(Ex. A)** on the same issue, only in reverse theory. He accused Semrad of "impermissibly unbundling services".   But here he accuses Geraci Law of <u>failing</u> to unbundle services. The Semrad matter is intrinsic to this complaint, on the facts and the law, although the parties avoided a ruling by Judge Cox by settling the matter by agreed order.

5.      Mr. Layng's position on the Semrad contracts is of public record and his pleadings there are intrinsic to the theories in his complaint here. Non-party collateral estoppel is an affirmative defense we are not raising here: Defendants seek dismissal because this complaint cannot state a cause of action when the contracts Mr. Layng complains of violate no law or rule of procedure or ethics.  On the contrary, the Semrad contracts approved by Mr. Layng may indeed be illegal and unethical: illegal because they unbundle services and use a threat to withdraw which violates the Code and local bankruptcy rules, and unethical for violating Illinois ethical rules.

6.      The agreed order settling the Semrad matter **(Ex. B)**[1] did not approve any specific contract, but Semrad started using significantly different contracts thereafter (**Ex. C** and **Ex. D**). The pleadings show plainly what Mr. Layng argued, and obtained. Now, after 2 years, while Geraci Law was <u>not</u> "impermissibly unbundling services", he argues the opposite. This exposes the fallacies of this complaint.  The Geraci contract approach is required by the Code, Local and Illinois Supreme Court Rules solves the *Bethea* and *Griffin* issues raised, and has been approved by other courts. See *In re Hazlett* and *In re Grimmett*, infra. Mr. Layng fails to cite those, and in the *Novak* case, he claimed that Semrad was "impermissibly unbundling services":

> …the fee structure employed by the combination of the Prepetition Contract and Post-Petition Contract (collectively, the "Zero-Down Fee Structure") impermissibly unbundles services in violation of the Local Rules of Bankruptcy Procedure for the Northern District of

---

[1] **Ex. B** It enjoined Semrad from using its prior postpetition contract and stated (odd provision) "*No third party may rely on this order in any other matter*"

Illinois (the "LBR") and violates Section 528 of the Bankruptcy Code." **(Ex. A at ¶ 15)**

To ensure that their fees would not be subject to the automatic stay and discharge injunction, Mr. Pryor and Semrad contractually unbundled their services between the pre- and post-petition periods and charged fees only for their post-petition services. **(Ex. A p. 1-2)**

7.      Sadly, Semrad's post-*Novak* prepetition contracts **(Ex. C)** still unbundle services: they claim "*Conditional Representation*" and "*if you refuse to sign [the agreement to pay for postpetition services within 10 days] the firm will file a motion to withdraw...*" <u>emphasis</u> added.  Sections titled "*Prepetition Fees*" and "*Post-Petition Fees" (sic)* unbundle both services and fees. Semrad's postpetition contracts **(Ex. D)** have the same language, and a highly suspect waiver of conflict of interest. On the contrary, Geraci Law contracts obligate Defendants to represent debtors in Chapter 7 cases from filing to case closing, bifurcating fees, but not "impermissibly bifurcating services" as Mr. Layng pled in *Novak.*

8.      Bifurcation of services is not permitted under L.R. 2090-5(B), and bifurcation of services, either by threat, or in the manner sought by Mr. Layng, is not permitted under 11 U.S.C. §§ 526 and 528. Filing a consumer case "no money down" on the fiction that a court would allow a withdrawal, simply to aid a "no money down" attorney, who is making an illusory threat while failing to disclose that it is illusory, is not what L.R. 2091-1(B) contemplates.

9.      The law is not as Mr. Layng argues here, or there: it is the opposite. On the facts of the Geraci contracts, the law is they are legal and ethical. Stating that *Griffin* (infra) "*in dicta, endorsing the bifurcation model and providing some*

*guidance on its use",* a Utah court approved bifurcated fee agreements where services were not unbundled to the detriment of debtors.

> The Court wishes to distinguish between the use of bifurcated fee agreements and a limited services agreement or unbundling... the purpose of the bifurcated fee agreements is decidedly not to abandon the debtor, but to enable the attorney to be paid for the post-petition services. It is true that ...debtors were given the option to proceed *pro se*. But that decision is solely up to the debtor, as the attorney is ready and willing to complete the representation upon the signing of the post-petition fee agreement. Thus, the bifurcated fee agreement is not for unbundling but to facilitate the debtor's post-petition payment for the attorney's post-petition services. *In re Hazlett*, 2019 WL 1567751 at 7-8 (Bankr. D. Utah Apr. 10, 2019).

10.     Mr. Layng's position, taken in *Novak*, is that Local Rule 2090-5(B) and Local Rule 2091-1(B) can be reconciled by the "use of a prepetition contract that does not unbundle services and that is expressly conditioned upon entry into a post-petition contract." *Novak, 18-04322, Doc 31.* But this position ignores the post-BAPCPA requirements of §§ 526 and 528, contract, and ethical rules.

11.     Local Rule 2090-5(B) says that, when a debtor retains an attorney, they are retained for all services in the bankruptcy case, and Section 528(a) of the Code, require the attorney to, *"within 5 business days after the first date it provides any bankruptcy services to an assisted person, set out all services they will perform in the written contrac*t." Thereby, an attorney's contract is required to set out all services to be performed during the pendency of the case. Section 526(a)(1) requires the attorney to provide all services listed in the contract, and Section 526(a)(3) says the attorney may not misrepresent to the debtor regarding the services they will provide. But the complaint ignores the Code and Rules. Mr. Layng desires the "threat to withdraw" contained in the Semrad contracts.

Making an illusory, (or real) threat to withdraw, despite being required to continue representation by Section 526(a)(1), is a misrepresentation under Section 526(a)(3) which would make the contract void pursuant to Section 526(c). L.R. 2091-1(B) does not contemplate granting repeated motions to withdraw by no-money-down lawyers anyway.[2]

## A. The Plaintiff Seeks to Force Geraci Law to Impermissibly Unbundle Services.

12.    Mr. Layng's position cites pre-BAPCA cases, *Bethea* and *Griffin,* where dicta mulling over the difficulties in a much simpler time offered only warnings, not solutions, to postpetition fees uncollected before filing.  Many districts had, then, local rules prohibiting unbundling, and many still do.[3]. Any "limited representation" is impossible to reconcile with not only bankruptcy rules, but ethical obligations. A Semrad/Layng-type contract, an agreement which attempted to  unbundle services, was held to be improper:

> An attorney, in accepting an engagement to represent a debtor in a bankruptcy case, will find it exceedingly difficult to show that he properly contracts away any of the fundamental and core obligations such an engagement necessarily imposes. Proving competent, intelligent, informed and knowing consent of the debtor to waive or limit such services inherent to the engagement will be required… Furthermore, for clarity, when accepting an engagement to represent a debtor in relation to a bankruptcy proceeding, an attorney must be prepared to assist that debtor through the normal, ordinary and fundamental aspects of the process. *In re Castorena*, 270 B.R. 504, 530 (Bankr. D. Idaho 2001

13.    Other courts have criticized threats to withdraw, or to unbundle:

---

[2] If Mr. Layng can produce even one example of 'no money down withdrawal allowed", it would be a newsworthy sighting, like the elusive albino panda.

[3] See https://www.abi.org/abi-journal/testing-the-limits-on-unbundled-limited-representation (2004pre-BAPCPA)

> Many decisions emphasize that when an attorney undertakes the representation of a bankruptcy debtor they are agreeing to do so for the entire case and not simply for various bits and pieces of it… While the court can relieve counsel of that ongoing obligation, by allowing them to withdraw, doing so generally requires compelling reasons, exceptional or unusual circumstances. One reason for this judicial supervision is to protect the interests of the client. *In re Collmar*, 417 B.R. 920, 921 (Bankr. N.D. Ind. 2009) (internal citations omitted).

and:

> [T]he record is more than adequate to allow the Court to conclude that the Agreement was inconsistent with Counsel's obligation to represent a debtor-client as a matter of bankruptcy law. *In re Grimmett,* 2017 WL 2437231 at *5 (Bankr. D. Id. 2017)

> Counsel's attempt to circumvent its duties to provide Debtor adequate representation absent timely payment was ineffective. And its practice of asking clients like Debtor to do so via a representation agreement, especially with no showing that Debtor was capable of representing herself, or that she had given her fully informed consent to such an arrangement, was improper. Id. at *7

14.    *Bethea v Robert J. Adams and Assoc. et al*, 352 F.3d 1125 (7th Cir 2003), held, simple and short, that an obligation for fees based on a prepetition contract for fees was discharged.  There was no issue of bifurcating services. The contracts involved "no money down" filings by the Adams, Kaplan and Zalutsky firms, who operated in remarkably similar manner to the Semrad firm. The phrase "hire and pay" relied on by Mr. Layng, is pre-BAPCPA dicta:

> Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins—for a lawyer's aid is helpful in prosecuting the case as well as in filing it.

Mr. Layng relies heavily on the "later hire" phrase, but in *Bethea,* the lawyers sued were not "<u>fired</u>" on case filing, just not <u>paid</u>.  *Bethea* only discharged unpaid prepetition fees: it did not release debtors' attorneys from servicing the case after

filing. Simply put, debtor's attorneys take their chances on getting paid if they do not collect before filing, unless the debtor, after filing, agrees to pay. And, the amount after filing can't be a hidden cost of prepetition services that was uncollected or "bumped up" as a hidden finance charge, which was a charge Mr. Layng levied against Semrad.  If the debtor does agree to pay, the agreement must be in writing. Hence a voluntary postpetition contract to pay postpetition fees, as the Geraci Law contracts are.   As Judge Cudahy said, concurring in part and dissenting in part in *Bethea*:

> It seems to me an arrangement that might enable debtors to obtain counsel in bankruptcy when counsel might be sorely needed. The elementary demands of fairness are offended when a necessitous debtor retains a lawyer to help him unburden himself of his debts and then hoists the unsuspecting attorney on his own petard by not only refusing to pay what is due under the retainer but asking that the lawyer be held in contempt.  352 F.3d at 1130.

15.    Here, Mr. Layng, not the debtor, wants to "hoist the unsuspecting attorney on his own petard", exactly as Judge Cudahy predicted. One cannot imagine a scenario where our 11 Bankruptcy Judges would routinely allow "no money down" attorneys to withdraw, so the objections raised, and remedy proposed, by this adversary is illegal, illusory and fraudulent. BAPCPA, our local Rules, and ABI Model Rule 1.2., settled unbundling of services as not permitted.

## B.  Local Rule 2090-5(B) Prohibits Unbundling of Services.

16.    L.R. RULE 2090-5(B) says:

> Counsel who represents the debtor upon the filing of a petition in bankruptcy is **deemed to appear as attorney of record on behalf of the debtor for all purposes in the bankruptcy case,** including any contested matter and any audit, but is not deemed to appear in any adversary proceeding filed against the debtor.

There is no legal basis to claim that a debtor's lawyer's obligations end by operation of law on case filing.  Only a new contract for fees, not a new contract for services postpetition, is needed.

**C. L.R. 2090-5(B) and 2091-1(B) Conflict with the Code, if not Each Other. L.R. 2091-1(B) Cannot be Construed to Allow Threatening Debtors to Obtain Payment.**

17.    A local rule of bankruptcy procedure cannot conflict with the Federal Bankruptcy Code. See Fed. R. Bankr. P. 9029(a)(1), *No v. Gorman,* 891 F.3d 138, 141 (4th Cir. 2018). 28 U.S.C. Sec. 2075, which implements the Bankruptcy Rules, provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right."   Any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code. *Cisneros v. United States* (*In re Cisneros*), 994 F.2d 1462, 1465 (9th Cir.1993) *Pacific Atlantic Trading Co.*, In re, 33 F.3d 1064 (9th Cir. 1994. Rule 2091-1(B) says

> B. Failure to Pay In a case under Chapter 7 of the Bankruptcy Code, including a case converted from Chapter 13, where (1) the debtor's attorney has agreed to represent the debtor conditioned on the debtor entering into an agreement after the filing of the case to pay the attorney for services rendered after the filing of the case, and (2) the debtor refuses to enter into such an agreement, the court may allow the attorney to withdraw from representation of the debtor on motion of the attorney.

Rule 2091-1(B) was adopted 2 months to the day after *Bethea* was issued. It also conflicts with § 526 and § 528 which supersede *Bethea* and 2091-1(B). So Mr. Layng, in forcing Semrad to revise and threaten withdrawal under his interpretation of the Bethea-induced 2091-1(B), is wrong, and he is wrong in trying to do it again here. It is a poor solution to the *Bethea* dicta.

**D.  The Complaint Must be Dismissed Since The Relief It Seeks is Unethical.**

18.    Threats of withdrawal are illusory, coercive, and impermissible under the Code, and local and ethical rules.  Bifurcation of services in consumer bankruptcy is barely old dicta, pre-BAPCPA. The fiction that a Court would actually and routinely allow after a "no-money down" enticement is an Implied Existence of Nonexistent Fact that violates ethical rules of advertising. Conduct which states or implies that the lawyers will engage in conduct that violates the Rules of Professional Conduct are prohibited in most states.  See *Fla. Bar v. Pape,* 918 So. 2d 240 (Fla.2005).   The falsity of threats to withdraw has been criticized:

> Of course, if Counsel intended to terminate its representation of Debtor, it must have permission of the Court to do so. *See* L.B.R. 9010.l(g)(2) (providing that "[n]o attorney of record for a party may withdraw from representation without leave of the court, upon notice to the client, all parties in interest, and notice and hearing.") The Court can confidently predict that Counsel would be unsuccessful in persuading it to approve withdrawal under these circumstances. Moreover, the Court presumes that Counsel likely appreciated it would be unable to secure permission to withdraw based solely upon Debtor's failure to pay fees. Under these circumstances, the Court assumes that Counsel's inclusion of that option in the Agreement was intended solely to serve as leverage in Counsel's efforts to get paid. *Grimmet op.cit.* 2017 WL 2437231 at *6

19.    Mr. Layng complains that debtors must engage Geraci Law twice, under threat of withdrawal for leverage and consideration. This is not permitted by Illinois law, local rule or the Code.  Therefore, his complaint fails, since this is the necessary premise on which his alleged violations of § 329, § 362 and § 524 are based.

**E.  Plaintiff's Legal Cites do not Support "Unbundling", "Reaffirmation" or "Consideration" Theories. No Relief can be Granted Under These Claims.**

20.    The complaint argues that *In re Griffin (op. cit.)* supports its claims for relief. It does not. *Griffin* was decided only 8 months after *Bethea*, As Judge Cox noted, Macey, Chern and Diab was again involved, this time in a hidden fee case. They obviously solicited discharged clients of Adams, Kaplan and Zalutsky and filed an adversary to put an end to "no money down" competitors, the opposite of what Mr. Layng is doing here. (*See Griffin*, 313 B.R. 757 at 759 fn.1, *Id.* at 763 fn. 5. *Griffin* interpreted *Bethea* to mean "the right of payment was settled by the prepetition contract, and therefore a dischargeable prepetition debt." *Bethea* did not involve a postpetition fee contract. *Griffin* did not involve a postpetition contract for postpetition fees, voluntarily entered into after disclosure that the debtor was financing the fees out of the redemption. *Griffin* was mainly about disclosure and Sec. 329.

21.    Geraci Law contracts provide the solutions to the problems Judge Cox identified in 2004 "General Considerations," *Griffin*, at 766-770. The legislative solution may be near[4], but in the meantime, bifurcating fees, not illusory bifurcation of services solves the problem. Post-*Bethea/Griffin* studies have shown that over 40% of debtors in Chapter 7 without attorney representation do not receive discharges[5].  But "full disclosure" that an attorney

---

[4] The proposed Consumer Bankruptcy Reform Act of 2020 allows consumer filers to pay attorney's fees through a repayment plan.

[5] https://www.cacb.uscourts.gov/sites/cacb/files/documents/publications/SRL%202017-2018.pdf

is going to violate various Code provisions, its statutory responsibility, L.R. 2090-5, and as Judge Cox points out, Illinois R.P.C. 1.16(b)(1)(F) and various Illinois cases, and make illusory threats, is not "full disclosure":  it is both a coercive trick, and an illusory threat, to induce the debtor to sign up for fees postpetition.

**F. A New Contract for Fees, Without Threat of Withdrawal or Unbundling, does not Violate 11 U.S.C. §§ 362 or 524. Either a New Fee Contract, or Voluntary Repayment, is Lawful.[6]**

22.    Section 524(f) states "Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." "Voluntarily" means the debtor knows what they are doing: full disclosure has been made. Even Mr. Layng does not claim that the Geraci Law contracts do not contain full disclosure. After disclosure, "if a debtor takes some action to show that they want to repay a debt, the action is voluntary." *In re Davis*, 244 B.R. 776, 787-88 (Bankr. N.D. Ill. 2000). "A voluntary repayment plan does not constitute a violation of § 524 or § 362(a)." *Id.* at 788 (internal citations omitted). "Debtors … can dispose of their post-petition earnings as they choose, including voluntary repayment of debts otherwise dischargeable in bankruptcy. 11 U.S.C. § 524 (f). *In re Hellums*, 772 F.2d 379, (7th Cir. 1985) The Court only required

> "…some positive indication that debtors indeed intend to voluntarily assume their pre-petition debts. Such a requirement safeguards against inadvertent repayment yet preserves the right of a debtor to voluntarily re-affirm otherwise dischargeable obligations." *Id.* at 381-2.

---

[6] The proposed Consumer Bankruptcy Reform Act of 2020 makes a knowing collection or attempt to collect on a debt discharged in bankruptcy an unfair practice under the FDCPA, unless the debtor has voluntarily chosen to repay the debt without pressure from the collector.

23.    The complaint states no factual basis for the allegation that Geraci Law "induces" debtors to involuntarily pay it, like the Semrad/Layng threat of withdrawal. Although it cites *In re Hudson*, 168 B.R. 368 (Bankr. S.D.Ill.1994), it neglects to mention that Judge Lessens said accepting voluntary payments does not violate the Code:

> Voluntary postpetition payments do not obligate a debtor on the original debt, and the debtor can later change his or her mind without sanction. *See* Ginsburg, *Bankruptcy: Text, Statutes, Rules,* § 12.12e1, at 12-108 (2d ed. 1991).  Hudson fn. 1 at 373

The complaint also fails to mention that *Hudson* also cites *Matter of Hellums and Matter of Holland*, 21 B.R. 681 (Bankr.N.D.Ind. 1982) which the Geraci contracts comply with. Proper disclosure without threat ensures it is voluntary.  The problem with the Semrad contracts Mr. Layng approves of is the threat of withdrawal, and lack of proper disclosure of the illusory threat of bifurcating the services. Threatening withdrawal under L.R. 2091-1(B), which conflicts with every other Code section and Rule, like bifurcating services, is illegal and unethical. "You'll go it alone unless you sign this" cannot be approved.

## G.  Moral Consideration is Good Consideration of Even a Discharged Debt.

24.    If consideration is needed, as Mr. Layng claims, moral obligation to pay is good consideration in the State of Illinois.  This Court's decision in *In re Glenn,* 542 B.R. 833 (Bankr. N.D. Ill. 2016) provides further basis for dismissing this complaint citing an opinion where Judge Posner wrote:

> It is true that the doctrine of "moral consideration" makes enforceable, without any fresh consideration, the promise of a debtor to pay a debt that is no longer enforceable (maybe because

the statute of limitations has run)." *Eastern Trading Co. v. Refco*, Inc.
229 F.3d 617, 625 (7th Cir. 2000)

25.     On the pleadings, the law does not prohibit payment of even a discharged debt, without a threat of withholding services, as long as full disclosure is made. Moral consideration is a little more subtle: an ability to do the right thing and retain the good will of his attorney, at least.   It is not only discontinued representation a debtor may fear, but less than enthusiastic representation if they don't pay their attorney.  Clients often need their attorney again, and may give moral consideration to that possibility such as "I'm back", for sake of argument, such as expressed in one of many reviews:

> MEL, Mr. Paul – BBB for SCH: Everyone at Geraci Law is straight up.  They are above board with everything they do & everyone there was nice to me.  They take care of biz.  I used Geraci years ago for a case and when things got bad again I didn't look around, I said i'm (sic) going back to these guys because they are nice people who get the job done for you.

## H.  There is No Violation of 11 U.S.C. § 362(a).

26.     A similar conclusion was reached in *Hazlett II* 609 B.R. 430 (Bankr. Utah 2019) finding that the postpetition fees of $2400 (there were $500 prepetition), were reasonable and arose postpetition, so Section 362 did not apply. It reiterated that bifurcated fee agreements, not bifurcated services, are proper.

## Conclusion

If the terms of representation are reasonable, and do not violate the law, Defendants should not be enjoined to satisfy some unidentified agenda. On the facts, despite its arguments, this complaint can never state a claim that the Geraci Law contracts are illegal, and should be dismissed with prejudice.

Dated: December 18, 2020.                          Respectfully Submitted,


                                                   */s/ Peter F. Geraci*
                                                   Peter F. Geraci

                                                   */s/ Nathan E. Curtis*
                                                   Nathan E. Curtis

                                                   */s/ Jonathan D. Parker*
                                                   Jonathan D. Parker

                                                   Geraci Law L.L.C.
                                                   55 E. Monroe St. # 3400
                                                   Chicago, IL 60603
                                                   312-739-2169
                                                   pgeraci@geracilaw.com